The final case on the call this morning is number 122626 Fillmore v. Taylor et al. Agenda number 7. Counsel, when you're ready, you may proceed. Good morning. May it please the Court, Counsel. I am Assistant Attorney General Caitlin Chenevert and I represent the defendants appelled. Inmates in Illinois have a variety of avenues available to them to rectify problems within the prison system, including through the prison's internal grievance process, constitutional claims brought under Section 1983, asserting claims against the Department and its employees in the Court of Claims, and sometimes to mandamus or certiorari. The appellate court's decision in this case would add another cause of action through mandamus to the list of remedies already available to inmates and that already adequately protect their rights. To compel compliance with the statutory provision of the Unified Code of Corrections or a Department of Corrections regulation found in the Illinois Administrative Code, that statute or regulation must grant the inmate a clear right to leave. This Court should decline to allow inmates to bring this type of case because statutes and Department regulations that govern internal prison management do not confer rights on inmates. This conclusion is informed by the United States Supreme Court's decision in Sanford v. Connor. That case involved a due process challenge to a prison disciplinary proceeding. In determining whether mandatory language in the prison regulation issue created or could form the basis for an inmate's liberty interest, the Supreme Court determined that it could not and explained that prison regulations do not confer rights on inmates and instead, quote, are primarily designed to guide correctional officials in the administration of prisons. This conclusion and the reasons that support that conclusion apply equally with regard to Illinois prison regulations and state law causes of action in the list of condoms. This is because state and federal courts have recognized that operating a prison system is difficult and complex and that prison officials are charged with ensuring the safety and security of both inmates and prison staff. It follows then that regulations are designed to help guide the discretion of prison officials and inform them about how they should be exercising their discretion for a variety of situations that may arise in day-to-day prison management. An opposite conclusion, that these types of regulations create enforceable rights for inmates, could disincentivize prisons from enacting regulations that are supposed to help guide discretion or discourage prisons from keeping some of the regulations that they already have. Additionally, a conclusion that regulations regarding internal prison management create enforceable rights for inmates will mean that courts will be micromanaging day-to-day operations within prisons. This is because first, courts must analyze the statutory provision for regulation at issue to determine whether the regulation is permissive, mandatory, or directly. Should the court determine that the regulation is mandatory and thus does grant the inmate a clear right to leave, that would not end the analysis. That is because the appellate court's decision explains below that even if an inmate adequately alleges a complaint for mandamus relief, the court may still deny the request if it is unconvinced the writ would accomplish substantial justice outweighing the disruption the writ might cause. So again, first courts will need to analyze the language of the regulation or statute to determine what enforceable rights, if any, it is meant to create. But then it will also be asked to determine what kind of disruption granting the writ might cause. This will be asking courts to surmise about potential disruptions within the prison system and then engage in a balancing test to determine whether the inmate's interest trumps the management concerns of the prison official. Counsel, there are procedures set forth in the Code of Corrections as well, is that right? That is correct. The Code of Corrections explains that the department is to set forth a grievance procedure. And so there is a grievance procedure available to inmates that includes several layers of review. And did the disciplinary action in this case comply with the Code of Corrections procedures? The disciplinary action. There are allegations that there are certain particular parts of regulations that were not followed. The proper way to analyze this case, though, would be under due process analysis, which the inmate did allege violations of his due process rights. Those are automatically afforded to the inmate under Wolfie McConnell because he did have a different interest in the state. Is it a fair statement that the Administrative Procedure Act procedures are more detailed than the Code of Corrections procedures? As it pertains to disciplinary proceedings? Yes. Yes, that is correct. And so your position then would be that the more detailed procedures are geared more toward prison management and not inmates? That's correct. It's designed to help guide the prison official's discretion. Where the Code of Corrections would be more toward the inmates? Yes, I believe there still would need to be analysis done to determine whether an inmate may pursue an action under the Unified Code of Corrections. There would either need to be an express right of action or analysis to determine whether there was an implied right of action. But you are correct that, yes, Unified Code of Corrections is the General Assembly's intent of what the Department should be doing. Thank you. Furthermore, going back to what I was saying a moment ago about the courts having to engage in an analysis of the Department regulations at issue to determine whether they are permissive, mandatory, or directory, and then engage in the Balancing Act analysis between the inmates' interest and the interest of the prison official, any question whether the appellate court's decision in this case  is answered in the affirmative by the appellate court's decision in the Siebert-Towers-Baldwin case that it issued shortly after this opinion. That Department regulation concerned the cost of photocopies within the prison, and the inmate in that case filed a complaint for mandamus relief, alleging that the prison was not complying with that Department regulation. The court held there that, under the regulation, the inmate could proceed on his mandamus claim, although ultimately the court affirmed dismissal, finding that the inmate had not shown any prejudice by failure to comply. But again, something like the cost of photocopies within the prison falls squarely within day-to-day prison management, and that's something that should be left to the discretion of prison officials rather than involving the courts. Dean Kelley's request for cost relief here similarly proves that point. With each regulation, the court must engage in this analysis about the purpose of the regulation, whether it is permissive or mandatory, and then again engage in the balancing test between the inmate's interest and that of the prison official. The fact that prison officials are routinely granted great deference when it comes to internal prison management is well established in the case law, but it can also be seen in the provisions of the Unified Code of Corrections. That code was initially acted in the early 1970s, and to be sure, it has been amended several times, and some provisions of the code have changed the way in which a prison official may exercise his or her discretion. But no one amendment has resulted in a wholesale curb of prison officials' discretion, especially when it comes to internal prison management and disciplinary procedures. Again, the disciplinary procedures provision of the code is found in 730 ILCS 5-387, and that, in subsection D of that provision, explains that where an inmate's liberty interest is at stake, the wolf protections must be followed. Otherwise, though, it leaves it entirely to the discretion of the prison officials and the director as far as what those regulations should look like and how the disciplinary proceedings should occur. Lastly, Your Honors, I would just like to mention briefly the cases from this court where this court has allowed inmates to pursue complaints for mandamus relief where they are seeking a hearing on whether or not they may be released on parole. Those cases do not stand for a broad proposition that inmates may seek a complaint for mandamus to enforce any and all regulations, particularly not regarding internal prison management and disciplinary proceedings. This is because parole or MSR and disciplinary proceedings are very different. A hearing to determine whether or not an inmate may be released on MSR simply determines whether the inmate remains within the prison system or is released outside of the prison system to complete his MSR term. So the conclusion there is one that solely affects the inmate. By contrast, disciplinary proceedings are quite different and are uniquely tied to prison management. Disciplinary reports and proceedings serve the important purpose of disciplinary rule infractions by inmates who remain within the prison's population and, where necessary, allows department officials to remove dangerous inmates from the general population. These proceedings, then, are closely related to internal prison management and are therefore different from MSR hearings. If the court has no further questions, we would ask... Just a quick question on your petition for a hearing matter. What are you asking us for there? Well, because the merits of this matter are fully briefed before this court, we do believe it's appropriate for this court to rule on the merits. We also, though, think that it was an error of the appellate court to reject our petition for re-hearing for filing, and that is because under Rule 367E, that does prohibit subsequent petitions for re-hearing, but where the court has entered a judgment on re-hearing which contemplates that a prior petition for re-hearing... You're not asking for the relief that would be appropriate to that, right? Well, should this court determine that this matter should be remanded with instruction for the appellate court to file and rule upon the petition for re-hearing? That may be appropriate, but again, because the merits are before this court, it's not necessary. Thank you. Thank you very much. Thank you. Good morning, Your Honors. May it please the court, counsel, my name is Peter Bomhart, and I represent the plaintiff appellee, Eric Bumhart. I want to quickly clarify something about the Code of Corrections, which is that Section 387D doesn't say anything about wolf. In fact, Section 387D singles out solitary confinement and the revocation of good credits for special treatment among punishments that the department can inflict. By requiring that the department promulgate rules to govern those proceedings, whereas facilities are allowed to set rules for other proceedings. Your Honors, it's important to have some context in this case. After being accused of serious gang-related disciplinary violations, Mr. Filmer was brought in front of an openly biased adjustment committee that had been ordered to find him guilty. He wasn't allowed to call any witnesses or present any evidence. The committee itself didn't review the evidence against him before handing down its foreordained verdict, guilty. Mr. Filmer was punished with an extra year in prison, another year in solitary confinement, and the loss of numerous other privileges. All of this was done in violation of the department's regulations and due process. Mr. Filmer filed this lawsuit to get a fair hearing where the department would follow its own rules. Defendants have responded, not by arguing that they follow the rules, but by taking the extreme position that they didn't have to, and what's more, that they never have to, because these rules are meant only to guide prison officials. That is wrong. We know that's wrong because the General Assembly has told us that the Code of Corrections is meant to prevent the arbitrary or oppressive treatment of inmates. The Code is what requires these regulations in the first place, and it also requires that they be provided to inmates. That includes all of the regulations at issue here, Your Honors, including the ones that the appellate court rejected below. These statutory provisions are meaningless if the regulations are unenforceable. The department might as well not issue any rules if they cannot be enforced. Unenforceable rules certainly can't protect inmates from arbitrary or oppressive treatment. The result would be limitless discretion on the part of prison officials to impose solitary confinement and revoke good conduct credits, which this court recognized in Lane  But this discretion is exactly what the General Assembly rejected in passing sentencing reform. The legislature replaced broad discretion to revoke good conduct credits with a uniform, determinate sentencing system that is based on protecting these credits against arbitrary interference. Defendants' position would undo all of that. It is an affront to legislative intent. It violates the bedrock law that courts will read statutes to give meaning to all their provisions. Is there any limit to the inmates' right to challenge regulations? Absolutely, Your Honor. We are not asking the courts to get involved in the day-to-day management of prisons. We are asking only that the courts enforce the regulations that govern disciplinary proceedings where good conduct credits or solitary confinement are at stake. Mandamus and certiorari, the vehicles for enforcing these rules, contain their own limits. Mandamus requires a non-discretionary ministerial duty on the part of an official, and both Mandamus and certiorari require that the inmate have suffered a substantial injury. So it simply isn't the case that inmates are going to be able to enforce any regulation, no matter what it governs or what the injury is. Your Honors, it is also undisputed that if prisoners cannot enforce these regulations, no one will. The General Assembly was not alone in allowing prisoners to enforce these regulations. This Court has held in three cases, Kinney, Pate, and Picasso's, that Mandamus is available to inmates when they seek to enforce the rules for proceedings that affect the duration of their incarceration. The defendants have not cited a single case from this Court going the other way. Instead, they argue that enforceable regulations are inconsistent with policy rationales from Sandin and Ashley. Of course, defendants can't argue that Sandin or Ashley controlled the outcome of this case, because both of those cases addressed only liberty interests under the Due Process Clause, and Sandin, in fact, encouraged inmates to seek relief available under state law. Defendants rely heavily on Ashley, but the Appellate Court's discussion of regulations in that case is entirely dicta. The Court even called it an epilogue. There are cases that have since followed Ashley, but these cases did not concern disciplinary proceedings, and they didn't independently analyze the question. They simply cited Ashley and moved on. But even if they have, the Appellate Court cannot overrule decisions of this Court, like Kinney, which held that inmates may enforce the regulations for proceedings affecting the duration of their confinement. So defendants are left with policy arguments themselves, but even those policies don't help them here. First, there is no urgent problem with prison administration requiring deference here, and if the Court wants to defer to prison administrators, then it should enforce the rules that the Department promulgated to balance inmates' rights against institutional concerns. Your Honors, it isn't quite clear what defendants want the Court to defer to here, other than their apparent desire to hold sham hearings. Second, the defendants argue that the Courts are going to be flooded with litigation, but enforcing these rules is not going to overwhelm the Courts. The sky hasn't fallen. Will it require a permissive, mandatory directory analysis with respect to each regulation? Your Honors, we're not requesting that sort of analysis. We're asking only that the Court hold that these regulations for these particular proceedings where good conduct credits for solitary confinements at stake be enforceable. So we would not say that this requires a permissive, mandatory directory analysis. Wouldn't an opinion of this Court in your direction presume that in future cases that analysis would be necessary with respect to each regulation? Your Honors, we are asking that these particular regulations be enforceable. That's a right-line rule. It would not require this permissive, mandatory analysis. And for future cases that didn't involve these regulations, we would not be asking you to address those regulations at this time. Your Honors, as I mentioned, since Kinney, the Courts have proven that they are more than capable of weeding out the sort of cases that defendants have mentioned. In fact, the Appellate Court's decision in this very case was applied to affirm the dismissal of a mandamus action challenging photocopy prices. And in any event, there are other protections in place against frivolous violence. The Code, for example, allows the Department to revoke up to 180 days of good conduct credit for inmates who file frivolous actions. Courts are always free to sanction litigants who abuse the system. The Department may revisit its rules for disciplinary proceedings, and the General Assembly, as a backstop, can revise the Code if a serious problem were to develop. But right now, the Code clearly protects inmates from arbitrary or oppressive treatment, which requires that these regulations be enforceable. And it is undisputed that only inmates will enforce them. Your Honors, this concern about frivolous cases is especially out of place in this case, where everyone agrees that the loss of good time credits Mr. Fillmore suffered is a substantial injury. The loss of good time credits is so serious that even the Constitution guards against it. The third policy from Sandin and Ashley is not even relevant here. The Code requires the Department to issue rules for disciplinary proceedings, and so the Department cannot be chilled from doing so. The upshot of this, Your Honors, is that inmates may enforce the regulations for disciplinary proceedings when good conduct credits or the imposition of solitary confinement is at stake. And that includes several of the regulations that the appellate court rejected here. First, Mr. Fillmore was entitled to have a hearing investigator review his disciplinary report. He was entitled, second, to a written reason for the denial of his witness requests. The third rule authorized him to produce relevant documents in his defense. Fourth, he should have received notice of all facts and charges against him before the hearing. And fifth, he was entitled to have an impartial adjustment committee beside his case. We explained in our briefs that each of these rules imposes a mandatory ministerial duty on prison officials, and we also explained how defendants violated these rules. Defendants have not meaningfully pushed back on that. They've only argued, really for the first time, that these rules are directory rather than mandatory. But that argument goes nowhere. Defendants' cases don't apply here. And even if these regulations were directory, relief would still be appropriate for Mr. Fillmore because he has shown that he was prejudiced by defendants' violations to the tune of an extra year in prison and another year in solitary confinement. The court should also reinstate Mr. Fillmore's due process claims. Under Wolf, he has an undisputed liberty interest in his due process credits, and so he was entitled to due process before they could be revoked. The defendants violated his rights by refusing to call witnesses without any explanation, by refusing to allow him to present or even review the evidence, exculpatory or otherwise, and by allowing a biased adjustment committee to prejudge his case. At no point did the committee give a reason for these actions. The committee merely said that Mr. Fillmore had requested no witnesses, which the record conclusively refutes, and the committee did not even mention the denial of his evidence requests, even though those requests are in the record and the committee acknowledged receiving them. Defendants have offered only after-the-fact justifications, but those are not properly before the court. And they fail on their merits for the reasons we explained in our brief. I want to emphasize here that the committee at no point even hinted that there was a security risk in calling Mr. Fillmore's witnesses or in allowing him to present or review the evidence that he has requested, and it is well established that courts will not presume that such a risk exists without an explicit statement from the department. It is also worth noting that the department has taken several untenable positions in this respect, such as arguing, for instance, that a decision-maker who has prejudged a case can still be fair, that months-old phone calls can be recited from memory, and most offensively, that the department's regulations, in fact, can be enforced, but only to deprive inmates of their constitutional rights. These arguments are no basis for denying the relief that Mr. Fillmore requests. Regarding the rehearing petition issue, unless your honors have specific questions, we will stand on our briefs since the defense has conceded that remand would be a waste of judicial resources in this case. At the end of the day, your honors, the question before the court is simple. Whether to give effect to the code's plain language and history and adhere to this court's longstanding precedent, allowing inmates to enforce the few protections they have against arbitrary extensions of their confinement. We ask that the court do so and affirm the appellate court's judgment that Mr. Fillmore may compel defendants to follow their own rules and give him a fair hearing. Counsel, before you sit down, can the code be amended to remove or amend the regulations? That would certainly be within the General Assembly's prerogative. But the General Assembly has not done so despite— So one set of rules might apply to one group of inmates and then a day or two later it could not apply or different ones could apply? Your honor, I think the legislative process takes a little longer than that. But the General Assembly can instruct the department to promulgate or not promulgate regulations as it sees fit. But at this point, the General Assembly has required that the department issue these regulations specifically for proceedings to revoke good conduct credits or to impose solitary confinement. And it has done so with the express purpose that inmates be protected against arbitrary or oppressive treatment. Notably absent, your honor, from the code's statement of purpose is any mention of guided prison officials. So we ask that the court affirm the appellate court's judgment with respect to the enforceability of these regulations. And we also ask that Mr. Fillmore be granted his request of cross-relief. Unless there are any further questions, your honor. Seeing none. Thank you. Thank you. Reply. Just a few points on reply, your honors. The first, there's an argument made that essentially a holding in our favor would mean that these regulations never had to be followed or there was never going to be anyone who would seek to enforce these regulations. And that's simply not true. These should be viewed as an internal matter within the prison system. And if there is an allegation or a grievance made by an inmate that a prison official has not complied with a particular regulation or is engaged in any kind of misconduct, that would be investigated by the warden or whoever the superior officer is of that prison official. And in fact, the code does charge the department with investigating grievances as well as investigating alleged misconduct by employees. So this really should be viewed as an internal matter within the prison system. And if there is a regulation or a rule that is not being followed, it should be brought to the attention of the grievance counselor, the grievance officer, or someone else within the prison and then allow the prison officials to investigate and determine whether or not there was a rule violation at all. This also encourages inmates to use the grievance process so that these kinds of matters can be dealt with internally within the Department of Corrections to allow the Department of Corrections to correct any issues or problems before having to go to court. I would also add that my opposing counsel painted our position as an extreme one, but in fact it was the decision by the appellate court in Ashley and it was followed for nearly 17 years by 4th District and others. To the extent that anything in Ashley may have been dictated, we don't believe that it was and believe it was central to the appellate court's holding, but nonetheless that holding was still followed and applied by several different courts throughout the years, not only to deprocess constitutional claims, but also to mandamus complaints alleging violations of Department directives as well as Department regulations. Additionally, there was argument that there is no need for discretion in this case because this dealt with in a disciplinary proceeding where there was no mention made by any prison official about security or safety threats. But of course we agree this was a serious case. There were allegations that this inmate was engaging in gang-related activity. And so of course there are going to be security and safety concerns when it comes to allowing other inmates to come in and testify during the hearing when some of those inmates are also known gang members. But to whatever extent this court was concerned about the inmate's ability or nonability to call witnesses in this case, again that would be properly analyzed under a due process question. And should the court determine that there are questions that need to be fleshed out or answered, the proper way to go about that would be to remand on the due process claim. But that is separate and distinct from any mandamus claim that the inmate may have to seek to enforce a particular regulation. Again, I'm just reiterating the statement about after-the-fact justifications. Again, if there is any concern about that, those can be determined on remand on the due process claim. But again, that would not be on a mandamus action. That would be just simply on whether or not this inmate was afforded his due process protections under the law. Counsel, do you agree that those rules could be amended? The code? Yeah. Yes, should the General Assembly wish to. Does that have any implication on whether or not there are rights involved in them or not? Well, I would note that Ashley was decided in 2000, and for 17 years the appellate courts have been following that holding and determining that there were no enforceable rights created by inmates. The General Assembly never amended the code to state that the code or regulations created any rights for those inmates. So that would imply that the code and the regulations were not meant to create rights for inmates. I suppose if the General Assembly wanted to change that, they wouldn't be able to. If there are no further questions, we would ask that this Court reverse the appellate court's decision and hold that internal prison regulations, including those for disciplinary proceedings, do not create enforceable rights for inmates. Thank you. Thank you. Case number 122626, Fillmore v. Taylor. And I will take an advertisement as agenda number seven. Mr. Governor, Mr. Baumgart, thank you for your arguments today. You're excused.